**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| THE OHIO STATE UNIVERSITY, | Case No. 2:16-cv-1052-MHW-TPK |
| Plaintiff, | Judge Michael H. Watson |
| vs. | Magistrate Judge Terence P. Kemp |
| CAFEPRESS INC. | DEFENDANT CAFEPRESS INC.'S ANSWER TO SECOND AMENDED COMPLAINT, AND COUNTERCLAIMS AGAINST THE OHIO STATE UNIVERSITY WITH JURY DEMAND ENDORSED |
| Defendant. | |

## ANSWER

Defendant CafePress Inc. ("CafePress"), by and through its undersigned counsel, hereby answers the Second Amended Complaint for Trademark Infringement, Unfair Competition, Passing Off, Counterfeiting and Violation of Right of Publicity and Declaratory Judgment ("SAC") filed by plaintiff The Ohio State University ("Ohio State"), as follows:

1.      In answering paragraph 1 of the SAC, CafePress denies that it (as opposed to third-party users of CafePress' website, www.cafepress.com) sold any t-shirts or other merchandise that Ohio State has alleged gives rise to claims for trademark infringement, unfair competition, passing off, and counterfeiting under the Lanham Act, 15 U.S.C. § 1114 and § 1125(a), and violation of the alleged rights of publicity assigned to Ohio State by head football coach Urban F. Meyer ("Meyer") under O.R.C. § 2741, *et seq.*, which CafePress denies have any merit. CafePress further denies that Ohio State's U.S. Federal Trademark Registration Nos. 4,104,956, 4,297,349, and 1,267,035 are valid and not subject to cancellation, and denies that  its

1

request for a declaration, pursuant to 28 U.S.C. §§2201-2202 and 15 U.S.C. §1119, has any merit.

2. CafePress lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 2 of the SAC, and therefore denies the same.

3. CafePress admits the allegations in paragraph 3 of the SAC.

4. The allegations in paragraph 4 of the SAC state a legal conclusion to which no response is required and are, therefore, denied on that basis.

5. CafePress lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 5 of the SAC, and therefore denies the same.

6. CafePress lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 6 of the SAC, and therefore denies the same.

7. CafePress lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 7 of the SAC, and therefore denies the same.

8. CafePress lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 8 of the SAC, and therefore denies the same.

9. CafePress lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 9 of the SAC, and therefore denies the same.

10. In answering paragraph 10 of the SAC, CafePress denies that Ohio State's U.S. Federal Trademark Registration Nos. 4,104,956, 4,297,349, and 1,267,035 are valid and incontestable. CafePress lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 10 of the SAC, and therefore denies the same.

11. In answering paragraph 11 of the SAC, CafePress admits that Ohio State maintains a website, located at http://www.osu.edu/O-H-I-O, which displays photographs of

people performing the alleged "O-H-I-O cheer." CafePress lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 11 of the SAC, and therefore denies the same.

12. CafePress lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 12 of the SAC, and therefore denies the same.

13. CafePress lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 13 of the SAC, and therefore denies the same.

14. CafePress lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 14 of the SAC, and therefore denies the same.

15. In answering paragraph 15 of the SAC, CafePress, on information and belief, denies that the public associates the Block O trademarks solely as indicating origin in Ohio State. CafePress lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 15 of the SAC, and therefore denies the same.

16. CafePress lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 16 of the SAC, and therefore denies the same.

17. CafePress lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 17 of the SAC, and therefore denies the same.

18. CafePress lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 18 of the SAC, and therefore denies the same.

19. CafePress lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 19 of the SAC, and therefore denies the same.

20. CafePress lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 20 of the SAC, and therefore denies the same.

21.     CafePress lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 21 of the SAC, and therefore denies the same.

22.     CafePress lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 22 of the SAC, and therefore denies the same.

23.     CafePress lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 23 of the SAC, and therefore denies the same.

24.     CafePress lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 24 of the SAC, and therefore denies the same.

25.     In answering paragraph 25 of the SAC, CafePress, on information and belief, denies that each of the Ohio State Trademarks have acquired strong secondary meaning, have achieved favorable national recognition, and have become assets of significant value as symbols pointing only to Ohio State, its services, products and goodwill. CafePress lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 25 of the SAC, and therefore denies the same.

26.     CafePress lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 26 of the SAC, and therefore denies the same.

27.     CafePress lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 27 of the SAC, and therefore denies the same.

28.     CafePress lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 28 of the SAC, and therefore denies the same.

29.     CafePress lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 29 of the SAC, and therefore denies the same.

30. CafePress lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 30 of the SAC, and therefore denies the same.

31. CafePress lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 31 of the SAC, and therefore denies the same.

32. CafePress admits the allegations in paragraph 32 of the SAC.

33. In answering paragraph 33 of the SAC, CafePress admits that it operates the website www.cafepress.com where users can customize blank products with original designs and phrases and offer them for sale via CafePress' website. CafePress allows users to automatically upload original designs for use in customizing a wide variety of goods, including t-shirts, baseball caps and other clothing, bags, bedding, stickers, cases for smartphones and electronics, posters, mugs, water bottles and other drinkware, and stationery, among many others. The users' designs are displayed on CafePress' website in the form of virtual products offered for sale by users, and the designs are automatically printed on blank merchandise only if a purchase order is received. CafePress denies that it is liable under applicable law for any infringing designs on its website. CafePress denies that it designs, manufacturers, promotes, sells and ships t-shirts and other products with a wide variety of designs on its own behalf. CafePress denies the remaining allegations in paragraph 33 of the SAC.

34. CafePress states that it offers over 250 customizable blank products, but denies the remaining allegations in paragraph 34 of the SAC.

35. CafePress lacks sufficient knowledge or information to form a belief as to the truth of the allegation that the products shown in paragraph 35 of the SAC are offered for sale by Ohio State licensees. CafePress admits only that the screenshots in paragraph 35 appear to be undated screenshots from its website, but denies that any of the products displayed are

5

infringing. CafePress further states that the images shown in paragraph 35 were promptly removed by CafePress (despite no legal obligation to do so) upon learning of Ohio State's objection to the images. CafePress denies the remaining allegations in paragraph 35 of the SAC.

36. CafePress lacks sufficient knowledge or information to form a belief as to the truth of the allegation that the products shown in paragraph 36 of the SAC are offered for sale by Ohio State licensees. CafePress admits only that the screenshots in paragraph 36 appear to be undated screenshots from its website, but denies that any of the products displayed are counterfeit or colorable imitations of registered Ohio State trademarks. CafePress further states that the images shown in paragraph 36 were promptly removed by CafePress (despite no legal obligation to do so) upon learning of Ohio State's objection to the images. CafePress denies the remaining allegations in paragraph 36 of the SAC.

37. CafePress denies the allegations in paragraph 37 of the SAC.

**COUNT ONE**
**INFRINGEMENT OF REGISTERED TRADEMARKS UNDER 15 U.S.C. § 1114**

38. CafePress repeats its responses to paragraphs 1 through 37 of the SAC as if fully set forth herein.

39. CafePress denies the allegations in paragraph 38 of the SAC.[1]

40. CafePress denies the allegations in paragraph 39 of the SAC.

41. CafePress lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 40 of the SAC, and therefore denies the same.

42. CafePress denies the allegations in paragraph 41 of the SAC.

---

[1] CafePress notes that Ohio State's Second Amended Complaint contains two paragraphs that are numbered 38.

43. In answering paragraph 42 of the SAC, CafePress lacks sufficient knowledge or information to form a belief as to the truth of the allegation that the goodwill of the Ohio State Trademarks is of enormous value, and therefore denies the same. CafePress denies the remaining allegations in paragraph 42 of the SAC.

44. CafePress denies the allegations in paragraph 43 of the SAC.

45. CafePress denies the allegations in paragraph 44 of the SAC.

## COUNT TWO
### UNFAIR COMPETITION AND PASSING OFF UNDER 15 U.S.C. § 1125(a)

46. CafePress repeats its responses to paragraphs 1 through 44 of the SAC as if fully set forth herein.

47. CafePress denies the allegations in paragraph 46 of the SAC.

48. CafePress denies the allegations in paragraph 47 of the SAC.

49. In answering paragraph 48 of the SAC, CafePress lacks sufficient knowledge or information to form a belief as to the truth of the allegation that the goodwill of the Ohio State Trademarks is of enormous value, and therefore denies the same. CafePress denies the remaining allegations in paragraph 48 of the SAC.

50. CafePress denies the allegations in paragraph 49 of the SAC.

51. CafePress denies the allegations in paragraph 50 of the SAC.

## COUNT THREE
### VIOLATION OF RIGHT OF PUBLICITY UNDER O.R.C. CHAPTER 2741

52. CafePress repeats its responses to paragraphs 1 through 50 of the SAC as if fully set forth herein.

53. CafePress lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 52 of the SAC, and therefore denies the same.

54.     In answering paragraph 53 of the SAC, CafePress lacks sufficient knowledge or information to form a belief as to the truth of the allegation that the Meyer Persona has commercial value, and therefore denies the same. CafePress denies the remaining allegations in paragraph 53 of the SAC.

55.     CafePress denies the allegations in paragraph 54 of the SAC.

56.     CafePress denies the allegations in paragraph 55 of the SAC.

**COUNT FOUR**
**COUNTERFEITING UNDER 15 U.S.C. §1114**

57.     CafePress repeats its responses to paragraphs 1 through 55 of the SAC as if fully set forth herein.

58.     CafePress denies the allegations in paragraph 57 of the SAC.

59.     CafePress denies the allegations in paragraph 58 of the SAC.

60.     CafePress denies the allegations in paragraph 59 of the SAC.

61.     CafePress denies the allegations in paragraph 60 of the SAC.

62.     In answering paragraph 61 of the SAC, CafePress lacks sufficient knowledge or information to form a belief as to the truth of the allegation that the goodwill of the Ohio State Trademark is of enormous value, and therefore denies the same. CafePress denies the remaining allegations in paragraph 61 of the SAC.

63.     CafePress denies the allegations in paragraph 62 of the SAC.

64.     CafePress denies the allegations in paragraph 63 of the SAC.

**COUNT FIVE**
**DECLARATION OF TRADEMARK VALIDITY**

65.     CafePress repeats its responses to paragraphs 1 through 63 of the SAC as if fully set forth herein.

66. In answering paragraph 65 of the SAC, CafePress admits that on November 3, 2016, Ohio State filed its Complaint alleging that CafePress had engaged in trademark infringement and counterfeiting of Ohio State's Federal Trademark Registration No. 4,104,956 (the "O-H-I-O Class 25 Registration"). CafePress admits that the SAC further alleges that CafePress had engaged in trademark infringement and counterfeiting of Ohio State's Federal Trademark Registration No. 4,297,349 (the "O-H-I-O Class 16 Registration") (collectively, the "O-H-I-O Registrations"). CafePress denies that Ohio State's claims have any merit.

67. CafePress admits the allegations in paragraph 66 of the SAC.

68. The allegations contained in paragraph 67 of the SAC state a legal conclusion to which no answer is necessary.

69. In answering paragraph 68 of the SAC, CafePress admits that Ohio State filed motions with the Trademark Trial and Appeal Board to suspend CafePress' petitions to cancel both of the O-H-I-O Registrations (Proceeding Nos. 92065466 and 92065441). The remaining allegations contained in paragraph 68 of the SAC state a legal conclusion to which no answer is necessary.

70. In answering paragraph 69 of the SAC, CafePress admits only that on November 3, 2016, Ohio State filed its Complaint alleging that CafePress had engaged in trademark infringement and counterfeiting of Ohio State's Federal Trademark Registration No. 1,267,035 (the "Buckeyes Registration") registered on February 14, 1984. CafePress denies that the alleged use of the Buckeyes Registration is infringing and that Ohio State's claims have any merit.

71. CafePress admits the allegations in paragraph 70 of the SAC.

72. The allegations contained in paragraph 71 of the SAC state a legal conclusion to which no answer is necessary.

73.     In answering paragraph 72 of the SAC, CafePress lacks sufficient knowledge or information to form a belief as to the truth of the allegation that Ohio State will be filing a motion with the Trademark Trial and Appeal Board to suspend the cancellation proceedings of the Buckeyes Registration. The remaining allegations contained in paragraph 72 of the SAC state a legal conclusion to which no answer is necessary.

## PRAYER FOR RELIEF

CafePress denies that Ohio State is entitled to any of the relief described in its prayer for relief, page 30 of the SAC.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

1.     Ohio State's SAC, and each claim for relief alleged, fails to state facts sufficient to constitute a claim for relief against CafePress.

## SECOND AFFIRMATIVE DEFENSE

### (Failure to Provide Notice)

2.     Ohio State's claims are barred, in whole or in part, because it failed to provide notice of the alleged user infringement, which is Ohio State's burden to prove. *See Tiffany Inc. v. eBay Inc*., 600 F.3d 93 (2d Cir. 2010).

## THIRD AFFIRMATIVE DEFENSE

### (No Actual, Specific and Contemporary Knowledge)

3.     Ohio State's claims are barred, in whole or in part, because CafePress had no actual, specific and/or contemporary knowledge of the alleged user infringement, which is Ohio State's burden to prove. *See Tiffany Inc. v. eBay Inc*., 600 F.3d 93 (2d Cir. 2010); *The Ohio State*

*University v. Teespring, Inc.*, No. 2:14-cv-397, 2015 WL 13016358, at *4-5 (S.D. Ohio Apr. 13, 2015)).

## FOURTH AFFIRMATIVE DEFENSE

### (Innocent Printer)

4.    Ohio State's claims are barred, in whole or in part, because CafePress is entitled to the innocent printer defense. 15 U.S.C. § 1114(2)(A).

## FIFTH AFFIRMATIVE DEFENSE

### (Fair Use)

5.    Ohio State's claims are barred, in whole or in part, by fair use.

## SIXTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate Damages)

6.    Ohio State's claims are barred, in whole or in part, because it failed to mitigate alleged damages.

## SEVENTH AFFIRMATIVE DEFENSE

### (Unenforceability Due to Abandonment)

7.    Ohio State's trademark claims are barred, in whole or in part, because Ohio State intentionally abandoned its trademarks by failing to adequately police or enforce its alleged trademarks.

## EIGHTH AFFIRMATIVE DEFENSE

### (Unenforceability for Failure to Function as a Trademark)

8.    Ohio State's trademark claims are barred, in whole or in part, because Ohio State's alleged trademarks fail to function as trademarks due to rampant and widespread third party use.

## NINTH AFFIRMATIVE DEFENSE

### (Unenforceability Due to Being Generic)

9.      Ohio State's trademark claims are barred, in whole or in part, because Ohio State's alleged trademarks are or have become generic.

## TENTH AFFIRMATIVE DEFENSE

### (Use Other than as a Trademark)

10.      Ohio State's trademark claims are barred, in whole or in part, because any alleged use of Ohio State's alleged trademarks was done other than as a trademark or service mark and thus would be unlikely to result in confusion with Ohio State's alleged trademarks.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Protected Speech)

11.      Ohio State's unfair competition and violation of right of publicity claims are barred, in whole or in part, because the alleged use is protected under the First Amendment of the United States Constitution and Article One of the Ohio Constitution.

## TWELFTH AFFIRMATIVE DEFENSE

### (Immunity under the Communications Decency Act)

12.      Ohio State's state law claims, including its violation of right of publicity claim, are barred, in whole or in part, because CafePress is entitled to immunity under the Communications Decency Act. 47 U.S.C. § 230.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

13.      Ohio State's claims are barred, in whole or in part, by the doctrine of unclean hands.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Laches)

14.     Ohio State's claims are barred, in whole or in part, by laches, and where some of the images at issue were uploaded by third-party users onto CafePress' website as long as 12 years prior to Ohio State filing suit against CafePress.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Waiver)

15.     Ohio State's claims are barred, in whole or in part, by the doctrine of waiver.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Estoppel)

16.     Ohio State's claims are barred, in whole or in part, by the doctrine of estoppel.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (Acquiescence)

17.     Ohio State's claims are barred, in whole or in part, by the doctrine of acquiescence.

## COUNTERCLAIMS AGAINST THE OHIO STATE UNIVERSITY

Defendant and counterclaimant CafePress Inc. ("CafePress") counterclaims against plaintiff and counter-defendant The Ohio State University ("Ohio State") as follows:

## NATURE OF ACTION

1.       On February 16, 2017, CafePress filed two petitions before the Trademark Trial and Appeal Board (TTAB) of the United States Patent & Trademark Office seeking cancellation of U.S. Reg. Nos. 4,104,956 and 4,297,349 (the "Ohio Cheer Designs") on the basis that Ohio State has failed to police third party use of the designs in those registrations, or designs confusingly similar thereto, and asserting that those registered designs therefore (1) fail to function as exclusive source-indicating trademarks, (2) are or have become generic, and/or (3) have been abandoned by Ohio State.

2.       On March 20, 2017, CafePress filed another petition before the TTAB seeking cancellation of U.S. Reg. Nos. 1,267,025 (the "Buckeyes Designation") on the basis that Ohio State has failed to police third party use of the designation in that registration, or designations confusingly similar thereto, and asserting that the registered designation therefore (1) fails to function as an exclusive source-indicating trademark, (2) is or has become generic, and/or (3) has been abandoned by Ohio State.

3.       Ohio State has moved to stay the cancellation actions filed by CafePress on the basis that the issues raised in CafePress' petitions could be addressed in this litigation.

4.       On March 27, 2017, Ohio State filed a Second Amended Complaint against CafePress alleging infringement of alleged U.S. Trademark Registration Nos. 4,297,349, 4,104,956, and No. 1,267,035, based on images designed by and uploaded to CafePress' website, www.cafepress.com, by third-party users.

5.      As set forth below, numerous third parties are using the Ohio Cheer Designs and the Buckeyes Designation, or designs or marks that are similar, in association with t-shirts and other apparel products, stickers, decals, and related products pertaining to classes of goods and/or services for which the Ohio Cheer Designs and the Buckeyes Designation have been registered by Ohio State.

6.      Upon information and belief, Ohio State has failed to police third party uses of the Ohio Cheer Designs and the Buckeyes Designation, and has ratified and/or acquiesced to third parties using the Ohio Cheer Designs and the Buckeyes Designation, and/or designs and designations which are confusingly similar.

7.      In view of the numerous third party uses of the Ohio Cheer Designs and the Buckeyes Designation, and/or designs and designations that are confusingly similar to Ohio State's alleged trademarks, coupled with Ohio State's failure to police third party use, the Ohio Cheer Designs and the Buckeyes Designation are subject to cancellation because they (1) fail to function as trademarks to indicate a single, exclusive source, (2) have become generic, and (3) Ohio State has, upon information and belief, intentionally abandoned its rights in the Ohio Cheer Designs and the Buckeyes Designation.

8.      Accordingly, CafePress seeks through this action a declaratory judgment that U.S. Trademark Registration Nos. 4,297,349, 4,104,956, and 1,267,035 are invalid and unenforceable.

9.      In addition, CafePress requests that this Court exercise its power under 15 U.S.C. § 1119 to order the Commissioner of Patents and Trademarks to cancel Ohio State's U.S. Trademark Registration Nos. 4,297,349, 4,104,956, and 1,267,035.

## PARTIES

10.     CafePress is a Delaware corporation with its principal place of business at 11909

Shelbyville Road, Louisville, KY 40243.

11.     According to its Second Amended Complaint, Ohio State is a public institution of

higher education, with its main campus located in Columbus, Ohio, and regional campuses

across the state. Upon information and belief, Ohio State's address is 190 North Oval Mall,

Columbus, Ohio 43210.

## JURISDICTION AND VENUE

12.     CafePress' counterclaims for a declaratory judgment arise under the Declaratory

Judgment Act, 28 U.S.C. § 2201, *et seq*. This Court has subject matter jurisdiction pursuant to 15

U.S.C. § 1119 and 28 U.S.C. §§ 1331, 1338, 2201, and 2202.

13.     This Court has personal jurisdiction over Ohio State as it has purposely availed

itself of the privilege of conducting activities within this State and District.

14.     Venue is proper in this Court under 28 U.S.C. § 1391.

## THE BUCKEYES DESIGNATION

15.     Ohio State has alleged trademark rights in U.S. Trademark Registration No.

1,267,035 ("Registration No. 1,267,035"). Registration No. 1,267,035 covers the standard

character designation BUCKEYES (the "Buckeyes Designation").

16.     The application that resulted in Registration No. 1,267,035 was filed on

September 29, 1982. The registration lists the following goods and services:

"Electric Lamps" in Class 11;

"Jewelry-Namely, Rings, Pins, and Key Chains, All Being Made of Precious
Metal" in Class 14;

"Pens, Posters, Decals, and Paintings" in Class 16;

"Tote bags" in Class 18;

"Mirrors and Folding Seats for Use by Individuals in Athletic Stadiums
and Plaques" in Class 20;

"Tumblers, Cups, Mugs, Glasses and Insulated Beverage Container Holders" in Class 21;

"Blankets, Textile Placemats, Quilts and Pennants" in Class 24;

"Clothing-Namely, T-Shirts, Scarves, Bibs, Sweatshirts, Athletic Shorts, Hats,
Jogging Suits and Sweaters" in Class 25; and

"Toy Stuffed Animals, Christmas Decorations, Plastic Toys" in Class 28;
"Providing College Level Educational Programs, Sport Exhibition Events and Recreation
Programs" in Class 41.

17.     While Registration No. 1,267,035 is premised on Ohio State's claim to own

exclusive rights in the Buckeyes Designation, Ohio State cannot claim such exclusivity. First,

upon information and belief, Ohio State has allowed numerous other entities to register and

apply for marks that are arguably similar to the Buckeyes Designation for similar or identical

goods. Second, an Internet search reveals that numerous entities are selling a variety of the goods

listed in Registration No. 1,267,035 featuring uses of the Buckeyes Designation or wording that

is similar.  Upon information and belief, many of those entities have not been licensed by Ohio

State to sell goods bearing the Buckeyes Designation.

18.     Upon information and belief, Ohio State has allowed the following U.S. federal

trademark registrations and applications to coexist with its purported claim to exclusivity of the

word "BUCKEYES":

　　　　　a)  U.S. Reg. No. 3,432,022 for the mark BORN BUCKEYE, owned by Kevin M.

　　　　　　　Davis, for "shirts, hats, shorts, pants" in Class 25 (the "BORN BUCKEYE

　　　　　　　Registration");

b) U.S. Reg. No. 1,194,369 for the mark BUCKEYE, owned by Boss Mfg. Co., for "industrial work gloves" in Class 25 (the "BUCKEYE Registration");

c) U.S. Reg. Nos. 4,833,383 and 4,833384, for the marks BUCKEYE COUNTRY SUPERFEST (in both word and design formats), owned by Festival Productions, Inc., for "clothing and apparel, namely, shirts, blouses, bandannas, caps, hats" in Class 25 (the "BUCKEYE COUNTRY SUPERFEST Registrations");

d) Allowed U.S. Appl. No. 86/715,194 for the mark SALTWATER BUCKEYE, owned by Patrick McBride, for "hats; t-shirts" in Class 25 (the "SALTWATER BUCKEYE Application");

e) Pending U.S. Appl. No. 87/095,997 for the mark BUCK EYE & Design

(  ), for "coffee cups, mugs, wine classes, drinking glasses, beer glasses, and shot glasses" in Class 21 and "clothing, namely, t-shirts and hats" in Class 25 (the "BUCK EYE & Design Application").

19. Upon information and belief, none of the owners of the above-listed federal registrations or applications have been licensed by Ohio State to sell any products bearing the Buckeyes Designation.

20. Upon information and belief, Ohio State has allowed the following Ohio state trademark registrations and applications to coexist with its purported claim to exclusivity of the word "BUCKEYES":

a) Ohio Reg. No. 1560934 for the mark BBI BUCKEYE BUDDIES, INC & Design

(  ), owned by Buckeye Buddies, Inc., for souvenirs, novelties,

games, decorations for Christmas and holidays and playthings" in Class 28 (the "BUCKEYE BUDDIES Registration");

b) Ohio Reg. Nos. 1966723, 1966725 and 1967397, each for the mark BUCKEYE HEADS ARE PHAT, owned by Tamera K. Ackers, for "tote bags" in Class 18; "coffee mugs and glassware" in Class 21; and "clothing" in Class 25, respectively (the "BUCKEYE HEADS ARE PHAT Registrations");

c) Ohio Reg. No. 2219325 for the mark BUCKEYE STATE OF MIND CLE CIN



COL & Design (  ), owned by Aaron Oatts, for "clothing" in Class 25 (the "BUCKEYE STATE OF MIND Registration"); and

d) Ohio Reg. Nos. 1957603 and 1957605, for the marks OHIO BREWEING COMPANY BUCKEYE BROWN and OHIO BREWING COMPANY BUCKEYE BLONDE ALE, both covering "t-shirts, hats, [and] clothing" in Class 25 (the "BUCKEYE ALE Registrations").

21.    Upon information and belief, none of the owners of the above-listed Ohio state registrations have been licensed by Ohio State to sell any products bearing the Buckeyes Designation.

22.    Set forth below are examples of many third-party uses, which, upon information and belief, are not licensed by Ohio State to sell goods bearing the Buckeyes Designation or wording that is similar. The types of goods shown below are listed in Registration No. 1,267,035:

**Class 14**

a)  By virtue of the Registration No. 1,267,035, Ohio State claims exclusivity in the word BUCKEYES for Class 14 products like jewelry, rings, pins and key chains. However, Ohio State can claim no such exclusivity in view of the following common law uses of designations incorporating the Buckeyes Designation.

b)  The website www.zazzle.com sells key chains bearing the Buckeyes Designation (or a similar designation), as shown in the example image below:



c)  The website www.poshmark.com sells key chains bearing the Buckeyes Designation, as shown in the example image below:



d)   The website www.argentsports.com sells jewelry pendants in the shape of
footballs bearing the Buckeyes Designation, as shown in the example image
below:



e) The seller and storefront Angelove on the website www.aliexpress.com sells bracelets bearing the Buckeyes Designation, as shown in the example image below:



f) Upon information and belief, unauthorized Class 14 products bearing the Buckeyes Designation are sold by sellers on www.etsy.com under the names Churchill Park Studio, KyKysTreasuresLLC, DandelionDivas, ValWheat, BBGraphicDesigns, and Stampedbysomer.

**Class 16**

a) By virtue of the Registration No. 1,267,035, Ohio State claims exclusivity in the word BUCKEYES for Class 16 products like "Pens, Posters, Decals, and Paintings." However, Ohio State can claim no such exclusivity in view of the following common law uses of designations incorporating the Buckeyes Designation.

b) The website www.zazzle.com sells notebooks bearing the Buckeyes Designation (or a similar designation), as shown in the example images below:



c) The website www.society6.com sells art prints and tapestries bearing the Buckeyes Designation (or a similar designation), as shown in the example images below:



d)  The website www.redbubble.com sells posters and photographic prints bearing the Buckeyes Designation (or a similar designation), as shown in the example images below:





e) Notably, the website www.redbubble.com also sells a variety of stickers bearing the Buckeyes Designation (or a similar designation), as shown in the example images below:





f)    The website www.redbubble.com also sells a variety of greeting cards bearing the

Buckeyes Designation (or a similar designation), as shown in the example images

below:



**Class 18**

  a)  By virtue of the Registration No. 1,267,035, Ohio State claims exclusivity in the

word BUCKEYES for Class 18 products like "tote bags." However, Ohio State

can claim no such exclusivity because it has allowed its registration to coexist

with Ohio Reg. No. 1966723 for the mark BUCKEYE HEADS ARE PHAT,

owned by Tamera K. Ackers, for "tote bags" in Class 18. As such, Ohio State is

not the only party claiming exclusivity in a BUCKEYE-formative mark for Class

18 tote bags. Moreover, Ohio State can claim no such exclusivity in view of the

following common law uses of designations incorporating the Buckeyes

Designation.

b) The website www.redbubble.com sells bags bearing the Buckeyes Designation (or a similar designation), as shown in the example images below:





c)  The seller and storefront JudyBeeStitches on the website www.etsy.com sells a

wristlet or purse bearing the Buckeyes Designation (or a similar designation), as

shown in the example image below:



d)  The seller and storefront CraftyBagCreations on the website www.etsy.com sells
    tote bags bearing the Buckeyes Designation (or a similar designation), as shown
    in the example images below:



e)  Upon information and belief, unauthorized Class 18 products bearing the
    Buckeyes Designation are sold by seller and storefront PersonalTouchEMB on
    www.etsy.com, and on www.zazzle.com.

**Class 21**

a)  By virtue of the Registration No. 1,267,035, Ohio State claims exclusivity in the
    word BUCKEYES for Class 21 products like "tumblers, cups, mugs, glasses and
    insulated beverage container holders." However, Ohio State can claim no such
    exclusivity because it has allowed its registration to coexist with the BUCK EYE
    & Design Application, pending U.S. Appl. No. 87/095,997 for the mark BUCK
    EYE & Design (         ), for "coffee cups, mugs, wine classes, drinking glasses,
    beer glasses, and shot glasses" in Class 21; and also with the BUCKEYE HEADS

ARE PHAT Registrations, including Ohio Reg. No. 1966725, for the mark BUCKEYE HEADS ARE PHAT, owned by Tamera K. Ackers, for "coffee mugs and glassware" in Class 21. As such, Ohio State is not the only party claiming exclusivity in a BUCKEYE-formative mark for Class 21 cups, mugs, and glasses. Moreover, Ohio State can claim no such exclusivity in view of the following common law uses of designations incorporating the Buckeyes Designation.

b) The website www.society6.com sells travel mugs bearing the Buckeyes Designation (or a similar designation), as shown in the example images below:



c) As another example, the website www.zazzle.com sells coffee mugs bearing the Buckeyes Designation (or a similar designation), as shown in the example image below:



d) The website www.teespring.com sells coffee mugs bearing the Buckeyes

Designation (or a similar designation), as shown in the example image below:



e) The website www.redbubble.com sells a variety of travel mugs and coffee mugs

bearing the Buckeyes Designation (or a similar designation), as shown in the

example images below:



**Class 24**

a)  By virtue of the Registration No. 1,267,035, Ohio State claims exclusivity in the

word BUCKEYES for Class 24 products like "Blankets, Textile Placemats, Quilts

and Pennants." However, Ohio State can claim no such exclusivity in view of the

following common law uses of designations incorporating the Buckeyes Designation.

b) The website www.jet.com sells banners bearing the Buckeyes Designation (or a similar designation), as shown in the example image below:



c) The seller and storefront TheOldTimeJunkShop on the website www.etsy.com sells pennant flags bearing the Buckeyes Designation (or a similar designation), as shown in the example image below:



d) The seller and storefront Scrunchiesbysherry on the website www.etsy.com sells

fleece blankets bearing the Buckeyes Designation (or a similar designation), as

shown in the example image below:



e) The seller Evergreen Enterprises on the website www.houzz.com sells fabric

garden flags bearing the Buckeyes Designation (or a similar designation), as

shown in the example image below:



f)   Upon information and belief, unauthorized Class 24 products bearing the

Buckeyes Designation are sold on the website www.society6.com, and by seller

and storefront Hammondshireblooms on www.etsy.com.

**Class 25**

a)   By virtue of the Registration No. 1,267,035, Ohio State claims exclusivity in the

word BUCKEYES for Class 25 products like "Clothing-Namely, T-Shirts,

Scarves, Bibs, Sweatshirts, Athletic Shorts, Hats, Jogging Suits and Sweaters."

However, Ohio State can claim no such exclusivity because it has allowed its

registration to coexist with (1) the BORN BUCKEYE Registration, U.S. Reg. No.

3,432,022 for the mark BORN BUCKEYE, owned by Kevin M. Davis, for

"shirts, hats, shorts, pants" in Class 25; (2) the BUCKEYE Registration, U.S.

Reg. No. 1,194,369 for the mark BUCKEYE, owned by Boss Mfg. Co., for

"industrial work gloves" in Class 25; (3) the BUCKEYE COUNTRY

SUPERFEST Registration, U.S. Reg. Nos. 4,833,383 and 4,833384, for the marks

BUCKEYE COUNTRY SUPERFEST (in both word and design formats), owned

by Festival Productions, Inc., for "clothing and apparel, namely, shirts, blouses,

bandannas, caps, hats" in Class 25;  (4) the SALTWATER BUCKEYE

Application, Allowed U.S. Appl. No. 86/715,194 for the mark SALTWATER

BUCKEYE, owned by Patrick McBride, for "hats; t-shirts" in Class 25; (5) the

BUCK EYE & Design Application, pending U.S. Appl. No. 87/095,997 for the

mark BUCK EYE & Design (  ), for "clothing, namely, t-shirts and hats"

in Class 25; (6) the BUCKEYE HEADS ARE PHAT Registrations, including

Ohio Reg. No. 1967397, for the mark BUCKEYE HEADS ARE PHAT, owned by Tamera K. Ackers, for "clothing" in Class 25; (7) the BUCKEYE STATE OF MIND Registration, Ohio Reg. No. 2119325 for the mark BUCKEYE STATE OF



MIND CLE CIN COL & Design (  ), owned by Aaron Oatts, for "clothing" in Class 25; and (8) the BUCKEYE ALE Registrations, Ohio Reg. Nos. 1957603 and 1957605, for the marks OHIO BREWEING COMPANY BUCKEYE BROWN and OHIO BREWING COMPANY BUCKEYE BLONDE ALE, both covering "t-shirts, hats, [and] clothing" in Class 25. As such, Ohio State is not the only party claiming exclusivity in a BUCKEYE-formative mark for Class 25 clothing products. Moreover, Ohio State can claim no such exclusivity in view of the following common law uses of designations incorporating the Buckeyes Designation.

b) The website www.redbubble.com sells clothing, including t-shirts and scarves, bearing the Buckeyes Designation (or a similar designation), as shown in the example images below:







c) The website www.skreened.com sells clothing, including t-shirts, bearing the Buckeyes Designation (or a similar designation), as shown in the example images below:



d)  The website www.teespring.com sells clothing, including t-shirts, bearing the

Buckeyes Designation (or a similar designation), as shown in the example images

below:



e)  The website www.zazzle.com sells a variety of apparel products, including t-

shirts, bearing the Buckeyes Designation (or a similar designation), as shown in

the example images below:





**Class 28**

a) By virtue of the Registration No. 1,267,035, Ohio State claims exclusivity in the word BUCKEYES for Class 28 products like "Toy Stuffed Animals, Christmas Decorations, Plastic Toys." However, Ohio State can claim no such exclusivity in view of the BUCKEYE BUDDIES Registration, Ohio Reg. No. 1560934 for the mark BBI BUCKEYE BUDDIES, INC & Design (  ), owned by Buckeye Buddies, Inc., for souvenirs, novelties, games, decorations for Christmas and holidays and playthings" in Class 28. Moreover, Ohio State can claim no such exclusivity in view of the following common law uses of designations incorporating the Buckeyes Designation.

b) The website www.christmasplace.com sells Christmas decorations bearing the BUCKEYES Designation (or a similar designation), as shown in the example image below:



c)  The website www.christmasmouse.com sells Christmas decorations bearing the

Buckeyes Designation (or a similar design), as shown in the example image

below:



**THE O-H-I-O CHEER**

23.     Ohio State has alleged trademark rights in U.S. Trademark Registration No.

4,104,956 ("Registration No. 4,104,956"). Registration No. 4,104,956 covers the design shown

below:



(the "4,104,956 Design").

24.    The application that resulted in Registration No. 4,104,956 was filed on June 17, 2011. The registration lists the following goods, in Class 25:

Apparel for dancers, namely, tee shirts, sweatshirts, pants, leggings, shorts and jackets; Athletic apparel, namely, shirts, pants, jackets, footwear, hats and caps, athletic uniforms; Children's and infant's apparel, namely, jumpers, overall sleepwear, pajamas, rompers and one-piece garments; Children's and infants' apparel treated with fire and heat retardants, namely, jumpers, overall sleepwear, pajamas, rompers and one-piece garments; Gloves for apparel; Infant wearable blankets; Scientific and technological apparel, namely, shirts, pants, jackets, footwear, hats and caps, uniforms; Viscous gel polymer sold as a component of finished custom cushioned footwear for non-orthopedic purposes and apparel; Wearable blankets in the nature of blankets with sleeves; Wearable garments and clothing, namely, shirts.

25.    Ohio State has alleged trademark rights in U.S. Trademark Registration No. 4,297,349 ("Registration No. 4,297,349"). Registration No. 4,297,349 covers the design shown below:



(the "4,297,349 Design").

26.    The application that resulted in Registration No. 4,297,349 was filed on February 5, 2012. The registration lists the following goods, in Class 16:

Albums for stickers; Bumper stickers; Children's wall stickers and murals; Decorative stickers for helmets; Magnetic bumper stickers; Printed pamphlets, brochures, manuals, books, booklets, leaflets, flyers, informational sheets and newsletters, adhesive backed stickers, and kits comprising one or more of the foregoing materials in the field of stickers; Stickers; Stickers and decalcomanias; Stickers and transfers.

27.     While Registration Nos. 4,104,956 and 4,297,349 are premised on Ohio State's claim to own exclusive rights in the Ohio Cheer Designs, Ohio State cannot claim such exclusivity. An Internet search reveals that numerous entities are selling apparel, stickers, decals and related products featuring designs that are identical or confusingly similar to the Ohio Cheer Designs. Upon information and belief, many of those entities have not been licensed by Ohio State to sell goods bearing the Ohio Cheer Designs.

28.     Set forth below are examples of many third-party uses, which, upon information and belief, are not licensed by Ohio State to sell products bearing the Ohio Cheer Designs:

a)  The website www.1803clothing.com sells several t-shirts, sweatshirts and scarves bearing the Ohio Cheer Design (or a similar design), in sizes for both adults and children, as shown in the example image below:



b)  Upon information and belief, 1803 Clothing Co. not only admits that its products are not licensed or endorsed by any organization or institution (including Ohio State). It also claims on its website that any imprints or logos featured on its

goods, including the image shown above, "are common law Trademarked and are not to be used modified or copied in any shape or form." Thus, it is clear that 1803 Clothing Co. is claiming trademark rights in an imprint and/or logo that is similar to the 4,104,956 Design in overall appearance and commercial impression.

c) The website www.crosstowntees.com sells t-shirts bearing the Ohio Cheer Design (or a similar design), as shown in the example image below:



d) The seller DALJ Tee on Amazon.com sells t-shirts bearing the Ohio Cheer Design (or a similar design), as shown in the example image below:



e)  The seller DeesHouseofCrafts on Etsy.com sells t-shirts bearing the Ohio Cheer Design (or a similar design), as shown in the example image below:



f)  The website www.inktastic.com sells several t-shirts, sweatshirts, hoodies, tank tops, onesies, beanies, and shorts bearing the Ohio Cheer Design (or a similar

design), in sizes for adults, babies, toddlers, and "youth," as shown in the example

image below:



g) The website www.inktastic.com is also selling such products through the

prominent online retailer Amazon.com, as shown below:



h)  The website www.beegeetees.com sells several onesies, bibs, mugs, canvas bags and mouse pads bearing the Ohio Cheer Design (or a similar design), as shown in the example image below:



i)  The website www.beegeetees.com is also selling such products through the prominent online retailer Amazon.com, as shown below:



j)  The website www.nerd-alert.zibbet.com sells vinyl decal stickers bearing the Ohio Cheer Design (or a similar design), as shown in the example image below:



k)  The website www.minglewoodtrading.com sells an "O-H-I-O Ohio Cheer vinyl

decal sticker OSU Football Buckeyes Ohio State" sticker in several different

sizes, as shown in the example image below:



l)  The website www.minglewoodtrading.com is also selling such products through

the prominent online retailer Amazon.com, as shown below:



m) The website [www.minglewoodtrading.com](http://www.minglewoodtrading.com) also sells a different decal called "OU

Ohio – Vinyl Decal Sticker – Buckeye State – University Cheer Football," as

shown in the example image below:



n) Upon information and belief, Ohio State goes by the acronym "OSU." Upon

information and belief, Ohio State does not go by the acronym "OU." Upon

information and belief, "OU" may refer to another university in Ohio, such as

Ohio University. The above decal suggests that Ohio State is not the only entity in Ohio that may be identified by or associated with silhouette figures holding their arms in the shapes of letters.

o)  The seller Creative Concept Ideas (CCI) on Amazon.com sells an "Ohio Buckeyes People Decal Vinyl Sticker bearing the Ohio Cheer Design (or a similar design), as shown in the example image below:



p)  Notably, upon information and belief, Creative Concept Ideas appears to believe that its decal vinyl sticker design is original and/or unique, and does not require any license by any organization. Indeed, Creative Concept Ideas states on its Amazon product page that it manufactures the product, and "If you purchase this Creative Concept brand decal from a seller other than Creative Concept Ideas, you are purchasing a counterfeit item." By using the term "counterfeit," it is clear that Creative Concept Ideas is, upon information and belief, claiming trademark

rights in an imprint and/or logo that is similar to the Ohio Cheer Design in overall appearance and commercial impression.

q)  The store "World Design" on Amazon.com sells an "Ohio Buckeyes football silhouette decal / 2014 national champions / vinyl window sticker -decal" and bearing the Ohio Cheer Design (or a similar design), as shown in the example image below:



r)  The seller AKWallArt on Etsy.com sells an "Ohio Arms Cheer Fan Red Wall Decal" bearing the Ohio Cheer Design (or a similar design), as shown in the example image below:



s)   The seller JustVinylIT on Etsy.com sells an "O-H-I-O OSU Silhouette Vinyl 6"

Car Decal Sticker Ohio" bearing the Ohio Cheer Design (or a similar design), as

shown in the example image below:



t)   Upon information and belief, unauthorized products bearing the Ohio Cheer

Design (or a similar design), are also sold by www.minglewoodtrading.com,

www.plantshirts.com, the seller LaBo on www.amazon.com, sellers Love Sticker

and DCTOP on www.aliexpress.com, the seller VinylExpressionsMore on

www.etsy.com, and the seller TheInkWall on www.ebay.com.

29. As alleged in Ohio State's Second Amended Complaint, Ohio State maintains a

website, located at http://www.osu.edu/O-H-I-O (the "Website"), which displays photographs of

people performing the alleged "O-H-I-O cheer."

30. The Website allows users to upload images of people performing the actions

depicted in the Ohio Cheer Designs. As part of such uploads, users are shown certain Terms and

Conditions, such as that Ohio State may refuse to post certain images or remove content, and that

Ohio State reserves the right to reproduce all images uploaded to the Website.

31. Thus, Ohio State encourages people to recreate the image shown in the Ohio

Cheer Designs. Nowhere in the Terms and Conditions does it state that individuals are prohibited

from sharing their images on any other media, or printing those images on any products and

selling those products.

## HARM TO CAFEPRESS

32. CafePress operates the website www.cafepress.com where users can customize

blank products with original designs and phrases and offer them for sale via CafePress' website.

CafePress allows users to automatically upload original designs for use in customizing a wide

variety of goods, including t-shirts, baseball caps and other clothing, bags, bedding, stickers,

cases for smartphones and electronics, posters, mugs, water bottles and other drinkware, and

stationery, among many others. CafePress does not review the designs provided by users prior to

upload. The users' designs are displayed on CafePress' website in the form of virtual products

offered for sale by users, and the designs are printed on blank merchandise only if a purchase order is received.

33.     Ohio State brought an action against CafePress for damages for alleged infringement of alleged registered trademarks and common law trademark rights, and for alleged violation of alleged rights of publicity in the Meyer Persona, based on images created by and uploaded to CafePress' website by third-party users.

34.     By its conduct, alleged in paragraphs 17 to 28 above, Ohio State has led users of the CafePress website and other third parties to believe that Ohio State does not object to third party uses of the Ohio Cheer Designs and the Buckeyes Designation, and/or designs and designations that are similar.

35.     By creating an account with CafePress and/or using its online platform, users agree to CafePress' User Agreement, which provides, among other things, that users ("you" or "your"): (i)  represent and warrant that "your use of the Website does not infringe the rights of any third-party including, but not limited to, copyrights, trademarks, patents, trade secrets, and rights of privacy and publicity"; and (ii) "[y]ou own all intellectual property and other rights, title and interest in and to any Content that you upload to the Website." Each of the users that uploaded the images that Ohio State claims in this lawsuit violate its alleged trademarks and right of publicity, assented to these terms and representations, which CafePress relied on. The users of the CafePress website, not CafePress, represent to CafePress that they are the creators and owners of the designs they upload to the website and thus they, not CafePress, are ultimately responsible for that content.

36.     The continued registrations of Registration Nos. 4,104,956, 4,297,349, and 1,267,035, and Ohio State's attempt to enforce  are causing harm to CafePress and users of its

website because Ohio State, through this lawsuit, is asserting exclusive rights to use the word "Buckeyes" and designs reflecting or which are similar to the "O-H-I-O Cheer"—which are widely used by third parties in various contexts—to force the removal of the images uploaded to CafePress' website that they claim are infringing based on their alleged registrations of the Ohio Cheer Designs and the Buckeyes Designation that, for the reasons stated above in paragraphs 1 to 28, are invalid and subject to cancellation.

37.     For example, users of the CafePress website are being harmed by their alleged inability to create designs bearing the word "Buckeyes," which is commonly used to refer to any native or resident of the State of Ohio, and does not exclusively refer to Ohio State's athletic department. *See* https://www.merriam-webster.com/dictionary/buckeye. Users of the CafePress website are also being harmed by their alleged inability to create designs with the alleged "O-H-I-O Cheer" to print on t-shirts and other blank merchandise offered through CafePress' online platform. While Ohio State encourages Ohio State fans to upload photos of them performing the "O-H-I-O Cheer," Ohio State's purported claims would prevent them from uploading those same photos onto CafePress' website and from creating t-shirts or other products with those same photos.

38.     Moreover, the continued registrations of Registration Nos. 4,104,956, 4,297,349, and 1,267,035 are causing harm to CafePress because CafePress, as a result of this lawsuit, has had to expend significant time and resources to proactively search for and monitor the CafePress website for any images automatically uploaded by users that could possibly be claimed by Ohio State as infringing the Ohio Cheer Designs or the Buckeyes Designation, and to remove those user images from its website, even though CafePress lacks any legal obligation to do so without prior notice.

## FIRST COUNTERCLAIM

### (Declaratory Judgment of Invalidity)

39.     CafePress re-alleges and incorporates by reference the allegations in paragraphs 1 to 38 of its Counterclaims as though fully set forth herein.

40.     Ohio State has alleged trademark rights in Registration Nos. 4,104,956, 4,297,349, and 1,267,035.

41.     Ohio State has sued CafePress for alleged infringement of Registration Nos. 4,104,956, 4,297,349, and 1,267,035.

42.     As such, an actual and justiciable controversy exists between CafePress and Ohio State with respect to CafePress' alleged infringement of Registration Nos. 4,104,956, 4,297,349, and 1,267,035.

43.     As set forth above, while Registration Nos. 4,104,956, 4,297,349, and 1,267,035 are premised on Ohio State's claim to own exclusive rights in the Ohio Cheer Designs and the Buckeyes Designation, Ohio State cannot claim such exclusivity. An Internet search reveals that numerous third parties are selling products featuring designs that are identical or confusingly similar to the Ohio Cheer Designs and the Buckeyes Designation. Upon information and belief, many of those entities have not been licensed by Ohio State to sell goods bearing the Ohio Cheer Designs and the Buckeyes Designation.

44.     Ohio State has allowed numerous third parties to register and apply for trademarks that are, at least under Ohio State's broad infringement theories, confusingly similar to the Buckeyes Designation for similar or identical goods. Upon information and belief, none of the owners of the third-party registrations for "BUCKEYE"-formative marks have been licensed by Ohio State to sell any product bearing the Buckeyes Designation.

45. Ohio State has failed to police third party uses of the Ohio Cheer Designs and the Buckeyes Designation and/or designs and designations that are confusingly similar.

46. As such, Ohio State has ratified and/or acquiesced to third parties using the Ohio Cheer Designs and the Buckeyes Designation and/or designs and designations that are confusingly similar.

47. In view of the numerous third party uses of the Ohio Cheer Designs and the Buckeyes Designation and/or similar designs and designations, coupled with Ohio State's failure to police third party use, the Ohio Cheer Designs and the Buckeyes Designation are invalid because they (1) fail to function as trademarks to indicate a single, exclusive source, (2) have become generic, and (3) Ohio State has, upon information and belief, intentionally abandoned its rights in the Ohio Cheer Designs and the Buckeyes Designation.

48. Absent a declaration of invalidity, Ohio State will continue to wrongfully assert Registration Nos. 4,104,956, 4,297,349, and 1,267,035 against CafePress, and thereby cause CafePress injury and damage.

49. Accordingly, CafePress seeks declaratory judgment that the trademarks shown in Registration Nos. 4,104,956, 4,297,349, and 1,267,035, as well as those registrations themselves, are invalid and unenforceable.

## SECOND COUNTERCLAIM

### (Cancellation of Registration No. 1,267,035)

50. CafePress re-alleges and incorporates by reference the allegations in paragraphs 1 to 49 of its Counterclaims as though fully set forth herein.

51. As set forth above, while Registration No. 1,267,035 is premised on Ohio State's claim to own exclusive rights in the Buckeyes Designation, Ohio State cannot claim such

exclusivity. Ohio State has allowed numerous third-parties to register and apply for trademarks that are similar to the Buckeyes Designation for similar or identical goods. Upon information and belief, none of the owners of the third-party registrations for the word "BUCKEYES" have been licensed by Ohio State to sell any product baring the Buckeyes Designation.

52. As set forth above, while Registration No. 1,267,035 is premised on Ohio State's claim to own exclusive rights in the Buckeyes Designation, Ohio State cannot claim such exclusivity. An Internet search reveals that numerous third parties are selling goods in Classes 14, 16, 18, 21, 24, 25 and 28 featuring designations that are identical or similar to the Buckeyes Designation. Upon information and belief, many of those entities have not been licensed by Ohio State to sell goods bearing the Buckeyes Designation.

53. Ohio State has failed to police third party uses of the Buckeyes Designation and/or designations that are, under Ohio State's broad infringement theories, confusingly similar.

54. As such, Ohio State has ratified and/or acquiesced to third parties using the Buckeyes Designation and/or designations that are similar.

55. In view of the numerous third party trademark registrations, applications and uses of the Buckeyes Designation and/or designations that are similar, coupled with Ohio State's failure to police third party use, the Buckeyes Designation has become generic.

56. In view of the numerous third party trademark registrations, applications and uses of the Buckeyes Designation and/or designations that are similar, coupled with Ohio State's failure to police third party use, the Buckeyes Designation fails to function as a trademark by failing to indicate a single, exclusive source.

57. For all the foregoing reasons, upon information and belief, Ohio State has intentionally abandoned its rights in the Buckeyes Designation.

58.     CafePress is being damaged by the continued existence of Registration No. 1,267,035 on the Principal Register, because Ohio State is using that registration to prevent the legitimate right of CafePress users to use the Buckeyes Designation, and/or designations that are similar.

59.     The continued registration of Registration No. 1,267,035 is also causing harm to CafePress because CafePress has to expend time and resources to proactively search for and monitor the CafePress website for any uses that could possibly be claimed by Ohio State as infringing the Buckeyes Designation, and to take those designs down, even though CafePress lacks any legal obligation to do so. CafePress is further being damaged by having to expend time and money in defending the present action.

60.     Registration No. 1,267,035 is subject to cancellation under 15 U.S.C. § 1119, on the basis that the Buckeyes Designation fails to function as a trademark that indicates a single, exclusive source, has become generic, and Ohio State has intentionally abandoned its rights in the Buckeyes Designation. CafePress requests that this Court exercise its power under 15 U.S.C. § 1119 to order the Commissioner of Patents and Trademarks to cancel Registration No. 1,267,035.

## THIRD COUNTERCLAIM

### (Cancellation of Registration No. 4,104,956)

61.     CafePress re-alleges and incorporates by reference the allegations in paragraphs 1 to 49 of its Counterclaims as though fully set forth herein.

62.     As set forth above, while Registration No. 4,104,956 is premised on Ohio State's claim to own exclusive rights in the Ohio Cheer Design, Ohio State cannot claim such exclusivity. An Internet search reveals that numerous third parties are selling apparel products

featuring designs that are identical or confusingly similar to the Ohio Cheer Design. Upon

information and belief, many of those entities have not been licensed by Ohio State to sell goods

bearing the Ohio Cheer Design.

63.     Ohio State has failed to police third party uses of the Ohio Cheer Design and/or

designs that are confusingly similar in association with Class 25 apparel products.

64.     As such, Ohio State has ratified and/or acquiesced to third parties using the Ohio

Cheer Design and/or designs that are confusingly similar in association with Class 25 apparel

products.

65.     In view of the numerous third party uses of the Ohio Cheer Design and/or similar

designs, coupled with Ohio State's failure to police third party use, the Ohio Cheer Design has

become generic in association with Class 25 apparel products.

66.     In view of the numerous third party uses of the Ohio Cheer Design and/or similar

designs in association with Class 25 apparel products, coupled with Ohio State's failure to police

third party use, the Ohio Cheer Design fails to function as a trademark by failing to indicate a

single, exclusive source.

67.     For all the foregoing reasons, upon information and belief, Ohio State has

intentionally abandoned its rights in the Ohio Cheer Design.

68.     CafePress is being damaged by the continued existence of Registration No.

4,104,956 on the Principal Register, because Ohio State is using that registration to prevent the

legitimate right of CafePress users to use the Ohio Cheer Design, and/or designs that are similar.

69.     The continued registration of Registration No. 4,104,956 is also causing harm to

CafePress because CafePress has to expend time and resources to proactively search for and

monitor the CafePress website for any uses that could possibly be claimed by Ohio State as

infringing the Ohio Cheer Design, and to take those designs down, even though CafePress lacks any legal obligation to do so. CafePress is further being damaged by having to expend time and money in defending the present action.

70.     Registration No. 4,104,956 is subject to cancellation under 15 U.S.C. § 1119, on the basis that the Ohio Cheer Design fails to function as a trademark that indicates a single, exclusive source, has become generic, and Ohio State has intentionally abandoned its rights in the Ohio Cheer Design. CafePress requests that this Court exercise its power under 15 U.S.C. § 1119 to order the Commissioner of Patents and Trademarks to cancel Registration No. 4,104,956.

## FOURTH COUNTERCLAIM

### (Cancellation of Registration No. 4,297,349)

71.     CafePress re-alleges and incorporates by reference the allegations in paragraphs 1 to 49 of its Counterclaims as though fully set forth herein.

72.     As set forth above, while Registration No. 4,297,349 is premised on Ohio State's claim to own exclusive rights in the Ohio Cheer Design, Ohio State cannot claim such exclusivity. An Internet search reveals that numerous third parties are selling stickers, decals and related products featuring designs that are identical or confusingly similar to the Ohio Cheer Design. Upon information and belief, many of those entities have not been licensed by Ohio State to sell goods bearing the Ohio Cheer Design.

73.     Ohio State has failed to police third party uses of the Ohio Cheer Design and/or designs that are confusingly similar in association with Class 16 stickers, decals and related products.

74. As such, Ohio State has ratified and/or acquiesced to third parties using the Ohio Cheer Design and/or designs that are confusingly similar in association with Class 16 stickers, decals and related products.

75. In view of the numerous third party uses of the Ohio Cheer Design and/or confusingly similar designs in association with Class 16 stickers, decals and related products, coupled with Ohio State's failure to police third party use, the Ohio Cheer Design has become generic.

76. In view of the numerous third party uses of the Ohio Cheer Design and/or similar designs in association with Class 16 stickers, decals and related products, coupled with Ohio State's failure to police third party use, the Ohio Cheer Design fails to function as a trademark by failing to indicate a single, exclusive source.

77. For all the foregoing reasons, upon information and belief, Ohio State has intentionally abandoned its rights in the Ohio Cheer Design.

78. CafePress is being damaged by the continued existence of Registration No. 4,297,349 on the Principal Register, because Ohio State is using that registration to prevent the legitimate right of CafePress users to use the Ohio Cheer Design, and/or designs that are similar.

79. The continued registration of Registration No. 4,297,349 is also causing harm to CafePress because CafePress has to expend time and resources to proactively search for and monitor the CafePress website for any uses that could possibly be claimed by Ohio State as infringing the Ohio Cheer Design, and to take those designs down, even though CafePress lacks any legal obligation to do so. CafePress is further being damaged by having to expend time and money in defending the present action.

80.     Registration No. 4,297,349 is subject to cancellation under 15 U.S.C. § 1119, on the basis that the Ohio Cheer Design fails to function as a trademark that indicates a single, exclusive source, has become generic, and Ohio State has intentionally abandoned its rights in the Ohio Cheer Design. CafePress requests that this Court exercise its power under 15 U.S.C. § 1119 to order the Commissioner of Patents and Trademarks to cancel Registration No. 4,297,349.

## CAFEPRESS' PRAYER FOR RELIEF

**WHEREFORE**, CafePress prays for relief as follows:

1.     That Ohio State take nothing by way of the Second Amended Complaint and the Court dismiss the Second Amended Complaint with prejudice;

2.     That the Court enter judgment that CafePress is the prevailing party in this action;

3.     The Court enter a declaratory judgment that the Ohio Cheer Designs and the Buckeyes Designation are invalid and unenforceable, and that corresponding U.S. Trademark Registration Nos. 4,104,956, 4,297,349, and 1,267,035 are invalid and unenforceable;

4.     The Court exercise its power under 15 U.S.C. § 1119 to order the Commissioner of Patents and Trademarks to cancel U.S. Trademark Registration Nos. 4,104,956, 4,297,349, and 1,267,035;

5.     That the Court award CafePress all costs, expenses, and attorneys' fees to which it is entitled under applicable law; and

6.     That the Court award any and all other relief to which CafePress may be entitled.

Dated: April 10, 2017                              Respectfully submitted,

*/s/ Robert M. Morrow*
Robert M. Morrow (0012367)
Christopher P. Pettit (0069926)
LANE ALTON
Two Miranova Place, Suite 220
Columbus, Ohio 43215
Tel: (614) 233-4713
Fax: (614) 228-0146
Email: bmorrow@lanealton.com
cpettit@lanealton.com

Ian C. Ballon (Admitted Pro Hac Vice)
Lori Chang (Admitted Pro Hac Vice)
GREENBERG TRAURIG, LLP
1840 Century Park East, 19th Floor
Los Angeles, CA 90067-2121
Tel: 310-586-7700
Fax: 310-586-7800
Email: Ballon@gtlaw.com
ChangL@gtlaw.com

*Attorneys for defendant CafePress Inc.*

## JURY DEMAND

CafePress Inc. hereby demands a jury trial of all issues so triable.

Dated: April 10, 2017          Respectfully submitted,

*/s/ Robert M. Morrow*
Robert M. Morrow (0012367)
Christopher P. Pettit (0069926)
LANE ALTON
Two Miranova Place, Suite 220
Columbus, Ohio 43215
Tel: (614) 233-4713
Fax: (614) 228-0146
Email: bmorrow@lanealton.com
cpettit@lanealton.com

Ian C. Ballon (Admitted Pro Hac Vice)
Lori Chang (Admitted Pro Hac Vice)
GREENBERG TRAURIG, LLP
1840 Century Park East, 19th Floor
Los Angeles, CA 90067-2121
Tel: 310-586-7700

Fax: 310-586-7800
Email: Ballon@gtlaw.com
       ChangL@gtlaw.com

*Attorneys for defendant CafePress Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on <u>April 10, 2017</u>, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following counsel of record:

Joseph Richard Dreitler
Dreitler True LLC
19 East Kossuth St.
Columbus, OH 43206
Tel: (614) 449-6640
Email: jdreitler@ustrademarklawyer.com

Mary R. True
Dreitler True LLC
19 East Kossuth St.
Columbus, OH 43206
Tel: (614) 449-6640
Email: mtrue@ustrademarklawyer.com

*Attorneys for plaintiff*
*The Ohio State University*

/s/ Robert M. Morrow
Robert M. Morrow (0012367)
LANE ALTON
Two Miranova Place, Suite 220
Columbus, Ohio 43215
Tel: (614) 233-4713
Fax: (614) 228-0146
Email: bmorrow@lanealton.com
*Attorneys for defendant CafePress Inc.*